NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
                                            :
THE DONNA KARAN COMPANY LLC,                :
                                            :
         Plaintiff,                    :   Hon. Stanley R. Chesler, U.S.D.J.
                                            :   Civil Action No. 12-2149 (SRC)
    v.                                       :
                                            :
AIRGROUP et al.,                            :   **OPINION & ORDER**
                                            :
         Defendants.                   :
_____:

**CHESLER, U.S.D.J.**

        This matter comes before this Court on two motions: 1) the motion for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, by Defendant Radiant Global Logistics, Inc. d/b/a Airgroup ("Airgroup"); and 2) the motion for summary judgment by Plaintiff the Donna Karan Company LLC ("Karan"), pursuant to Federal Rule of Civil Procedure 56. The Court heard oral argument on October 7, 2013. For the reasons stated below, Plaintiff's motion will be granted, and Defendant's motion will be denied.

        This case arises from a dispute over the liability of Airgroup, a carrier, for a shipment, made by shipper Karan, which was stolen during the shipping process. The parties do not dispute any of the fundamental facts about the shipment and the theft. At issue on these motions are two questions: 1) whether Airgroup's liability for the theft is limited by the Carmack Amendment, 49 U.S.C. § 14706; and 2) if Airgroup's liability is not so limited, what the measure of damages should be.

        The Carmack Amendment regulates the liability of common carriers for loss or damage to

shipments:

> The Carmack Amendment to the Interstate Commerce Act imposes absolute liability upon carriers for the actual loss or injury to property caused by a carrier. Under [the statute], carriers, however, are permitted to limit their liability through a written agreement with the customer or shipper which evidences an absolute, deliberate and well-informed choice by the shipper. Permitting carriers to limit their liability is a carefully defined exception to the Carmack Amendment's general objective of imposing full liability for the loss of shipped goods; courts, thus, carefully scrutinize agreements purporting to limit such liability.

Carmana Designs, Ltd. v. North American Van Lines, Inc., 943 F.2d 316, 319 (3d Cir. 1991) (citations omitted).

The key Third Circuit case on this "carefully defined exception" to absolute liability is Emerson Elec. Supply Co. v. Estes Express Lines Corp., 451 F.3d 179, 186 (3d Cir. 2006):

> Prior to the enactment of the TIRRA and the ICCTA, a carrier had to satisfy four requirements before it could limit its liability under the Carmack Amendment:
>
>> (1) maintain a tariff within the prescribed guidelines of the Interstate Commerce Commission; (2) obtain the shipper's agreement as to [the shipper's] choice of liability; (3) give the shipper a reasonable opportunity to choose between two or more levels of liability; and (4) issue a receipt or bill of lading prior to moving the shipment.

The carrier bears the burden of proof. Id. Since the enactment of the TIRRA and ICCTA in 1994 and 1995, carriers are no longer required to file tariffs with the Surface Transportation Board, but need only provide them to the shipper upon request. Id. at 187 n.6; 49 U.S.C. § 14706(c)(1)(b).

The present motions turn on the third element, the question of whether the carrier gave the shipper a reasonable opportunity to choose between two or more levels of liability. The relevant facts are undisputed. The carrier used an online shipment booking system named

2

"Shiptrax." (Defs.' 56.1 Stmt. ¶¶ 73, 74.) The shipper entered shipment information on a series of web pages, and there were empty boxes for the declared value and for the insured value of the shipment. (Defs.' Resp. 56.1 Stmt ¶ 12; Sakal Aff. Ex. T at RGL0124.) For the shipment at issue, the Karan employee booking the shipment left both boxes blank. (Defs.' 56.1 Stmt. ¶¶ 84.) Karan accepted the "Rules and Regulations" of the carrier. The question before this Court is whether this provided a reasonable opportunity to choose between two or more levels of liability.

Karan contends that it did not. Karan cites the deposition testimony of Karan employee Barbara Freitag, who stated that the shipping rate was based solely on weight and never on value. (Sakal Aff. Ex. R at 97:16-98:10.) Karan asserts as an undisputed fact that, under the terms of a rate agreement entered into on February 9, 2004, the shipping rate was based on the weight of the cargo. (Pl.'s 56.1 Stmt. ¶¶ 3, 4.) In its responsive statement, Airgroup disputed this only to the extent that the rate agreement was based on "weight and service." (Defs.' Resp. 56.1 Stmt. ¶ 4.) Airgroup thus does not contend that the rate changed based on the declared value of the shipment.

At oral argument, the Court asked Airgroup's counsel whether the rate would have been different had Karan entered values in either the declared value or shipping value boxes. Counsel responded that the rate would not have changed – an entry into the boxes would have had no impact on the rate. How, then, can this be considered an opportunity to pay a higher rate by declaring a higher value?

Airgroup argues that, by virtue of the fact that the Shiptrax form offered Karan the opportunity to declare a value for the shipment, and that Karan chose to leave it blank, Airgroup provided a reasonable opportunity for Karan to choose between two or more levels of liability,

3

and that, by leaving the box empty, Karan made an enforceable choice to accept the level of liability stated by Airgroup in its "Rules and Regulations." This Court does not agree. There is no evidence in the record that Airgroup offered Karan an alternative rate for a higher level of liability. Consider, for example, the facts of National Small Shipments Traffic Conference, Inc. v. United States, 887 F.2d 443, 444 (3d Cir. 1989), in which the Third Circuit found that the reasonable opportunity requirement had been met: the tariff expressly stated four different rates, based on the amount of the declared value. There is no similar evidence here. To the contrary, the undisputed evidence of record shows that Karan was not offered a choice of rates based on level of liability: there is no evidence that a declaration of value would have caused a different rate to apply.

Airgroup points to Rule 22 of its "Rules and Regulations," which states:

Declared Value

(A)   Declared Value is agreed and understood to be not more than 50 cents per poind [sic] or $50.00, which ever is lesser.

(B)   Insurance coverage is available upon request for amounts to $25,000.00. Any request for insurance coverage in excess of $25,000.00 must have approval by the home office of Airgroup Express prior to movement of the freight.

(Sakal Aff. Ex. Q.) No reasonable finder of fact could find this to be an offer of two or more levels of liability. It is, rather, a limit to one level of liability, with a separate and supplementary mention of some very limited insurance coverage, but with no rate given. There is no way to read this as an offer of a shipping rate for a higher level of liability for a shipment of value greater than $25,000, since it states that such coverage requires prior approval. An offer to consider something for approval, with unspecified material terms, does not constitute an

4

"opportunity" offered to a shipper. Rather, the facts of this case resemble those in Emerson, in which Third Circuit held:

> Estes's tariff limited its liability to ten cents per pound regardless of whether the shipper declared a higher value or left the declared value box blank in the bill of lading. Because the tariff did not provide an option to declare a higher value with a corresponding level of liability, Estes failed to meet the two or more levels of liability requirement.

Emerson, 451 F.3d at 188. Similarly, in the instant case, Rule 22 limited the carrier's liability to fifty cents per pound.[1]

This Court concludes that there is no evidence of record that Airgroup gave Karan a reasonable opportunity to choose between rates for two or more levels of liability. The requirements for limitation of liability under the Carmack Amendment have not been met. Karan has demonstrated that no material factual disputes preclude the entry of judgment as a matter of law. On this issue, the Court will grant Karan's motion for summary judgment and deny Airgroup's.

Having found that Airgroup's liability is not limited by the Carmack Amendment, this Court now considers the proper measure of Karan's damages. "Hijacked goods, unlike those destroyed, ultimately compete with the manufacturer and, therefore, no true replacement is possible." Polaroid Corp. v. Schuster's Express, Inc., 484 F.2d 349, 351 (1st Cir. 1973). The Third Circuit has held:

> [O]rdinarily when the carrier is responsible for the loss of the goods in transit, the

---

[1] Airgroup argues that, under the Carmack Amendment, it "is required merely to offer two rates, which it did." (Defs.' Opp. Br. 4.) What were the two rates? The record shows only one. Airgroup contends: "Airgroup provided a rate based on weight and a rate based on value." (Defs.' Br. 21.) This Court has not been shown the rate based on value that Airgroup contends it provided to Karan.

5

shipper is entitled to recover the contract price from the carrier. Yet the Supreme Court has recognized that the test of market value is at best but a convenient means of getting at the loss suffered. Thus it may be discarded and other more accurate means resorted to, if, for special reasons, it is not exact or otherwise not applicable. Of course, the carrier has the burden of proof to demonstrate that a court should deviate from the market value rule.

Robert Burton Assocs. v. Preston Trucking Co., 149 F.3d 218, 221 (3d Cir. 1998) (citations omitted). Airgroup contends that, where the stolen items were to be added to the stock of the shipper, the owner could replenish the supply with replacement goods from the wholesale market or from its own stock. Yet Airgroup's brief rests on the argument that Karan has failed to show that the stolen items would re-enter the stream of commerce in the United States. As Burton makes clear, it is Airgroup, not Karan, that bears the burden of proof on this issue. Airgroup claims that "it is highly unlikely that these [stolen] products will ever re-enter the domestic market." (Defs.' Opp. Br. 11.) The problem here is that Airgroup has offered no evidence to support this contention. There is nothing in the record from which any reasonable finder of fact could conclude that the theft of the goods did not cause Karan to lose sales. Airgroup has failed to meet its burden of proof that this Court should deviate from the market value rule. Karan's damages shall be measured by the domestic market value of the stolen shipment.

Karan's motion for summary judgment is granted in its entirety, and Airgroup's is denied.

For these reasons,

**IT IS** on this 22nd day of October, 2013

**ORDERED** that Airgroup's motion for partial summary judgment (Docket Entry No. 59) is **DENIED**; and it is further

**ORDERED** that Karan's motion for summary judgment (Docket Entry No. 63) is **GRANTED.**

          s/ Stanley R. Chesler
          STANLEY R. CHESLER, U.S.D.J.